## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NO. 04-14517 |
| | * | |
| APPLIANCE CONTROL GROUP, INC., | * | |
| ET AL, | * | Chapter 7 |
| | * | |
| Debtor | * | |
| | * | NO. 07-A-00384 |
| CARL E. LEVI, Trustee for | * | |
| Hamilton County, Tennessee, | * | |
| | * | Honorable A. Benjamin Goldgar |
| Plaintiff | * | |
| | * | |
| HILCO CAPITAL, L.P., | * | |
| | * | |
| Defendant | | |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT

Plaintiff, Carl E. Levi, Trustee for Hamilton County, by counsel, submits the following Brief in Support of his Motion for Summary Judgment against defendant, Hilco Capital, L.P. as follows:

### JURISDICTIONAL ISSUES/PARTIES TO THE ACTION

Plaintiff sued Hilco in the Chancery Court for Hamilton County, Tennessee, being a trial court of general jurisdiction in our State court system. Hilco removed the litigation to the United States District Court for the Eastern District of Tennessee under the "Federal Question" provisions of 28 U.S.C. §1441(b). The federal question on which Hilco based its removal was Hilco's assertion that the various orders of this (federal) Bankruptcy Court were fundamental to the claim of the County and the defense of Hilco. The United States District Court for the Eastern District of Tennessee dealt

with this in its opinion in which it transferred the case to the Northern District of Illinois for referral to this Court, and determined in the process that "neither party has disputed that Hamilton County could have brought this action in the District Court for the Northern District of Illinois." The County did not make any objection to the removal from the State Court to the United States District Court and does not contest that a federal question is involved in this litigation. Thus, jurisdiction in the Eastern District of Tennessee was proper, and jurisdiction in the United States District Court for the Northern District of Illinois is likewise proper inasmuch as Hilco is located within said district.

Insofar as the jurisdiction of this Bankruptcy Court is concerned, the U.S. District Court in Tennessee purported to transfer the case to Illinois and then assign it directly to the United States Bankruptcy Court for the Northern District of Illinois. The Judge there cited   Edge Petroleum Operating Company, 311 B.R. at 745, and City of Liberal, Kansas v. Trailmobile Corporation, 316 B.R. 358, 361 (D. Kan. 2004), in support of its decision and order. In the Trailmobile case, it appears that the United States District Court in Kansas transferred its case to the Northern District of Illinois and directly to the Bankruptcy Court.

Procedurally, as stated, the U.S. District Court for the Northern District of Illinois would have had original jurisdiction for this case as raising a federal question. Plaintiff believes that the District Court there had the authority to refer, assign, or otherwise transfer the case to the United States Bankruptcy Court (this Court) 28 U.S.C. §157(c)(2). That would have been a logical decision, since this Court is in the best position to interpret its own orders, determine and grant the relief to which the Plaintiff is entitled, and state why.

As practical matter, while the Chapter 7 Trustee, the debtor, and the estate are not parties, the estate and its creditors will be impacted by the decision that will be rendered in this case and by any recovery made by the Plaintiff. In the Chapter 7 case, the Plaintiff as a creditor of Appliance Control Group, Inc., has filed a secured/priority claim as to that estate, on October 20, 2005 (attached

-2-

as **Exhibit 1)**, in the face amount of the tax plus any allowable interest at the statutory rate, filed as secured by tangible personal property, but also as priority unsecured "to the extent tax and interest exceeds value of personal property assets." It is the information of the Plaintiff that there are no personal property assets nor proceeds remaining in the estate which are subject to its lien, which seems to be clear now in view of the distribution of the same to Hilco Capital, L.P., so that *vis-a-vis* the estate the Plaintiff's claim is now priority unsecured without interest. Obviously, to the extent that Hilco pays the tax debt, that reduces or perhaps even eliminates the estate's liability to Plaintiff making more funds available to other creditors. Thus, this litigation is certainly important to the estate administration, in addition to being "related to" this Court's previous orders. 28 U.S.C. §157(c)(1).

The defendant also argued, and the Tennessee federal court agreed, that this Court's extensive retention of jurisdiction to enforce its orders was an additional important jurisdictional factor. (A copy of defendant's motion is attached as **Exhibit 2**, in which defendant articulates the bases for this Court's jurisdiction, with which both District Courts have agreed.) In paragraph 34 of this Court's order, the retention of jurisdiction is clear:

34.    This Court retains jurisdiction to:

(a)    Interpret, implement and enforce the terms and provisions of this Order and the terms of the Sale Agreement, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith;

(b)    Compel delivery of the Assets to the Purchaser;

(c)    Resolve any disputes arising under or related to the Asset Sale to the Purchaser, including, without limitation, resolving Cure Amounts owing to counterparties to the Contracts; and

(d)    Adjudicate all issues concerning alleged liens and other Claims and any other alleged Interests in and to the Assets or the Sale Proceeds, including the extent, validity, enforceability, priority and nature of all such alleged liens and other Claims and any other alleged interests relating to the Sale Proceeds.

Amended Order, attached hereto as **Exhibit 3** . It would seem in fact that this is also a "core proceeding" under 28 U.S.C. §157(b)(2)(A), (K), (L), (N), and/or (O), and it could have been commenced as an original action in this Court.

Additionally, Plaintiff still has lien rights against the personal property items themselves, now owned by a company called Burner Systems, International, Inc. which appears to have purchased the same in good faith through the bankruptcy process in this Court. Plaintiff is aware now of the injunction in the sale order of this Court prohibiting enforcement of liens against any assets sold to Burner Systems, and particularly the personal property assets subject to Plaintiff's lien. Plaintiff has considered requesting this Court, either by motion or adversary proceeding, to declare that the injunction is void as to Plaintiff for lack of notice. However, inasmuch as Burner Systems was a good faith *bona fide* purchaser, Hilco got all the proceeds, and the Court's sale order purports to attach Plaintiff's liens to the proceeds, Hilco is the obvious and most legitimate defendant. Thus, Plaintiff determined to proceed first against Hilco.

Lastly, Honorable Ronald A. Guzman, Judge of the United States District Court for the Northern District of Illinois, referred this matter to this Court by docket entry dated May 2, 2007: "The Court refers this case to the U.S. Bankruptcy Court for the Northern District of Illinois, see 28 U.S.C. §157, after which the Court terminates this case from this Court's docket." It would seem that the actions of the two United States District Judges, first in Tennessee, then in Illinois, are the law of the case and while they cannot create jurisdiction, they have assumed either that original jurisdiction exists in this Honorable Court, or that they have referred the case to this Court for judgment pursuant to 28 U.S.C. §157(c)(2).

The irony of this whole discussion of jurisdiction is that the Plaintiff filed the suit where the Plaintiff thought proper, and it has now moved three times. Defendant first removed the case to federal court in Tennessee and persuaded the Tennessee federal court to transfer the case to the Illinois federal court, and it has now been referred to the "Illinois Bankruptcy Court." All this has come to pass, and now there is a question about jurisdiction. The Plaintiff is happy with the current jurisdiction or would be happy with jurisdiction in the United States District Court for the Northern District of Illinois. In fact, the Plaintiff just wants to be in a court and to get relief on the merits. The fact that the District Court has already declined jurisdiction and referred it to this Honorable Court seems to the Plaintiff to be conclusive.

## LEGAL ARGUMENT

### Introduction

Since the case is properly situated in the Northern District of Illinois, the Court must also determine what effect Appliance Control Group, Inc.'s lack of notice to Hamilton County, Tennessee had on the sale of the personal property at issue. Appliance Control Group, Inc. was required by the *United States Code* and *Federal Rules of Bankruptcy Procedure* to give proper notice to Hamilton County, Tennessee not only that it had filed for bankruptcy, but also that it would sell its personal property assets to HCI. No proper notice was ever given to Hamilton County, Tennessee of either of these events. The legal effect of this lack of notice is that Hamilton County, Tennessee has the option to have this Court declare the sale void and pursue the assets, or to attach and enforce its lien to the proceeds received from the sale of the personal property.

## Relevant Facts

Plaintiff is the tax collector for Hamilton County, Tennessee. The County is authorized to and does levy a tax on tangible business personal property located within Hamilton County. These are levied on an annual basis, are secured pursuant to statute by a first lien on the business personal property of the taxpayer in question located within said county, and are also a personal obligation of the taxpayer.

Taxes for the tax year 2004 were assessed on tangible business personal property owned by the debtor in this case, Appliance Control Group, Inc., which in Hamilton County operated under the name of Harper Wyman Co., filed its report of property under said name, and was known in all respects to Hamilton County as Harper Wyman Co. and not as Appliance Control Group, Inc. The base tax owed by this debtor for 2004 and constituting a lien on the debtor's assets was in the sum of $48,571.00. By statute also, taxes which are not paid by the delinquency date (being March 1 of the year following the tax year and in this case, March 1, 2005) bear interest from the date of delinquency at the rate of 12 percent per annum and a penalty in an additional amount of six percent per annum.

When Appliance Control Group, Inc. filed its bankruptcy petition, Hamilton County, Tennessee received the initial Notice of Filing Petition in the name of Appliance Control Group, Inc., and not Harper Wyman Co.. It received no further notices of any activity in the case until some time in the middle or latter part of 2005. The County continued to proceed in its normal routine of receiving property reports from debtors, including "Harper Wyman Co.," for year 2004, waiting until the County Commission set the tax rate, and then in September or October of 2004 issuing tax bills based on the assessed valuation times the tax rate. That calculation resulted in a bill in the base

-6-

amount of $48,571.00. The tax bill for 2004 did not become delinquent until March 1, 2005. At that

point, the tax bill began to accrue interest and penalties, at a combined monthly rate of 1.5 percent,

or $728.57.

Unknown to the County and without any notice from the debtor, the Court, or Hilco, certain

post-petition financing order(s) were entered in the Appliance Control Group, Inc. bankruptcy case,

followed by asset sale order(s), followed by disbursement order(s), during the spring and summer

of 2004. The sale order(s) in particular purported to direct and approve a sale of debtor's business

personal property free of liens which would attach to proceeds. Since the lien of Hamilton County

still existed at the time of sale, pursuant to this Court's order it attached to the proceeds. Defendant

Hilco Capital, L.P. got the proceeds of that sale, in a sum exceeding $7,000,000.00, with Plaintiff's

lien still attached. Plaintiff has made demand on Hilco for payment of its base tax plus penalties and

interest which has been refused.

### Notice Requirement

In order to conduct a sale of its assets, Appliance Control Group, Inc. was required to give

notice to all interested parties both of its pending bankruptcy petition and of the proposed sale of the

assets. *See* Fed. R. Bankr. P. 1005, 2002; *see also* 11 U.S.C. §§ 342, 363. It was Appliance Control

Group, Inc.'s responsibility "to insure that all creditors have been properly notified in accordance with

these requirements." Grand Pier Center, LLC et al. v. ATC Group Services, Inc., 2007 WL 2973829

(N.D. Ill. 2007) (attached hereto as **Exhibit 4**) *citing* In re Anderson, 159 B.R. 830, 837 (Bankr. N.D.

Ill. 1993) ("The burden is on Debtor to insure that all creditors have been properly notified.")

This notice requirement is premised on the most obvious of due process principles: a creditor may not be deprived of its property interest without notice and hearing or opportunity to be heard. The Northern District of Illinois has considered this constitutional argument, and has found that

> Precedent instructs that notice to creditors which fails to comply with the Bankruptcy Rules is insufficient to preclude post-bankruptcy claims by those creditors. *See* In re Hanson, 397 F. 3d 482, 487 (7th Cir. 2005) (stating that "where the Bankruptcy Code and Bankruptcy Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect.")

Grand Pier Center, LLC et al. v. ATC Group Services, Inc., 2007 WL 2973829 (N.D. Ill. 2007).

In order for notice to be valid, it must comply with the requirements of Rule 2002 of the Federal Rules of Bankruptcy Procedure. This Rule of Bankruptcy Procedure requires notice to be served on all interested parties before the sale of any bankruptcy assets. *See* Fed. R. Bankr. P. 2002(a). It also provides that "the caption of every notice ... shall comply with Rule 1005." Fed. R. Bankr. P. 2002(n). Rule 1005 requires "the title of the case.... The title of the case shall include ... all other names used within six years before filing the petition. Fed. R. Bankr. P. 1005. The importance of the caption has also been considered in Illinois:

> Accuracy of the caption is of substantive importance in bankruptcy cases. It is the caption which informs the creditor of exactly who has commenced a bankruptcy case so that the creditor has an opportunity to determine whether they have a claim against the debtor's estate.

In re AM Int'l, Inc., 142 B.R. 252, 256 (Bankr. N.D.Ill. 1992).

In contravention of these requirements, Appliance Control Group, Inc. did not list Harper Wyman Co., a name which it had used within six years of filing its petition and, in fact, was then using, on its Notice of Filing Petition. Therefore, the only notice received by Hamilton County, Tennessee was ineffective as a matter of law. If Appliance Control Group, Inc. had listed the name

Harper Wyman Co., Hamilton County, Tennessee would at least have had notice of its pending bankruptcy petition.

In addition, neither Appliance Control Group, Inc. or anyone else gave notice, defective or otherwise, to Hamilton County, Tennessee of the priming of its lien by the debtor in possession financing, or the sale of its personal property, as was required by Rule 2002(a) of the Federal Rules of Bankruptcy Procedure. Even if Appliance Control Group, Inc.'s Notice of Filing Petition should be considered adequate notice, Hamilton County, Tennessee was also entitled to notice of the sale of Appliance Control Group, Inc.'s assets, and cannot be bound by any order which strips it of its property rights in the lien without proper notice. *See* In re Dartmoor Homes, Inc. 175 B.R. 659 (Bankr. N.D.Ill. 1994) *quoting* City of New York v. New York, N.H. & H.R. Co., 344 U.S. 293 (1952) ("However, if a debtor is a corporate Chapter 11 debtor, the Supreme Court has said that 'even creditors who have knowledge of a reorganization have the right to assume that they will receive reasonable notice of relevant dates before their claims are barred.'")

Considering these precedents, it is clear that Appliance Control Group, Inc. was required to comply with the notice requirements contained within the Federal Rules of Bankruptcy Procedure. Therefore, it was required not only to give proper notice to all creditors when it filed its bankruptcy petition, but also to apprize those creditors "of all significant steps in its Chapter 11 case." In re Dartmoor Homes, Inc. 175 B.R. 659 (Bankr. N.D.Ill. 1994).

The Northern District of Illinois has recently encountered a very similar case. In Grand Pier Center, LLC et al v. ATC Group Services, Inc. 2007 WL 2973829 (N.D.Ill. 2007), the court considered whether proper notice was given by ATC Group Services, Inc. to one of its creditors, Grand Pier Center, LLC. Id. Grand Pier Center, LLC only did business with ATC Group Services,

Inc. under the name "ATC Associates, Inc," and "had no reason to believe that 'ATC Associates, Inc.' was affiliated with 'ATC Group Services, Inc.'" Id. at 8. Even though ATC Group Services, Inc. had listed "ATC Associates, Inc" as one of its business names on its original Notice of Filing Petition, it did not list that name on any subsequent notices, which were at issue in the case. Id. at 7-8. The court found that notice was defective, and the claim of Grand Pier Center, LLC, was not discharged. Id. at 8. Just as ATC Group Services, LLC, failed to list all of the names by which it was known, Appliance Control Group, Inc. failed to list "Harper Wyman Co.," the only name by which it was known to Hamilton County, Tennessee or any of its notices. Just as the lack of notice in the Grand Pier case operated to preserve the claim of Grand Pier Center, LLC, the lack of notice in this case operates to preserve the lien of Hamilton County, Tennessee.

Appliance Control Group, Inc.'s initial notice to Hamilton County, Tennessee was ineffective because it failed to list all of the names by which it was known, as was required by Rule 1005 of the Federal Rules of Bankruptcy Procedure. As a direct result of this noncompliance, Hamilton County, Tennessee was not given notice of its pending bankruptcy petition. Appliance Control Group, Inc. also failed to give any notice at all of the sale of its assets, as was required by Rule 2002 of the Federal Rules of Bankruptcy Procedure. Both of these failures have deprived Hamilton County, Tennessee of its property interest in the lien on the assets without notice or due process of law.

## Effect of Lack of Notice

The federal circuits are split with regard to the effect of lack of notice on the sale of personal property in a bankruptcy case:

> The most common remedy has been to set the sale aside or treat the sale as voidable, typically at the option of the creditor or interested party who failed to receive notice of the sale. This more conventional approach demands strict adherence to the Code's

procedural requirements; a sale conducted without proper notice is viewed as a taking of one's property in direct violation of due process rights.

Other courts, however, have molded alternative remedies when dealing with a section 363 sale conducted in violation of applicable notice requirements.... Under this less orthodox approach, an otherwise defective sale will be upheld when such treatment is in the best interest of all parties involved.

Schovanec, Bankruptcy: The Sale of Property Under Section 363: The Validity of Sales Conducted Without Proper Notice, 46 Okla. L. Rev. 489, 517 (citations omitted).  The law in the Northern District of Illinois seems to favor the former approach, and treat sales which are conducted without proper notice as voidable at the option of the creditor:

> The usual effect of a sale or lease of property of the estate, conducted outside of the ordinary course of business but without adherence to the notice and hearing requirements of § 363(b)(1), is that any sale held is rendered null and void.... Some courts have suggested a "balancing test" to see if the estate has been benefitted by the transaction in dispute in order to determine if the transfer should be rendered invalid for failure to adhere to notice requirements of § 363 (b)(1).... However, to allow such transactions to stand over objection of creditors who were denied proper notice, even when there has been some benefit to the estate, would subvert the requirements of § 363(b) and encourage transfers to be completed without adherence to the requirements of that section.

In Re Weisser Eyecare, Inc. 245 B.R. 844, 850 (Bankr. N.D.Ill. 2000).

HCI will no doubt argue that it was a *bona fide* seller of the personal property, and that it was not its responsibility to insure that proper notice was given.  This argument obviously fails:

> Section 363(m) will not, however, protect a party buying from the trustee in a sale free and clear of liens where no notice is given to the lienholder, Such purchaser will be held to have purchased subject to the lien.

2 Collier on Bankruptcy, ¶ 363.13, at 363-40 (15th Ed. 1987).

Therefore, Hamilton County, Tennessee has the option to choose

-11-

whether it wishes to void this sale, and thus restore all of the parties, including all of the lienholders, to the status quo prior to the sale, or whether it wishes to let the sale go through and merely attempt to attach its lien to the proceeds in its regular turn.

In Re Fernwood Markets, 73 B.R. 616 (Bankr. E.D. Penn. 1987), *cited and adopted by* In Re Weisser Eyecare, Inc. 245 B.R. 844, 850 (Bankr. N.D.Ill. 2000).

## **CONCLUSION**

Therefore, as to HCI, Hamilton County, Tennessee may choose whether to void the sale of the personal property items, or to attach its lien to the proceeds from the sale. This is because it did not receive adequate notice from Appliance Control Group, Inc. of either its pending bankruptcy or the sale of the personal property. This lack of notice resulted in the loss of the County's property interest in the lien without due process of law. Under the precedents discussed above, the sale is voidable at the option of the County. The County has elected to pursue the money which is still subject to its lien, while filing a protective claim against the estate. Plaintiff is entitled to judgment against and recovery of the money given to HCI in payment for the personal property sold to Burner Systems, International.

Respectfully submitted,

SPEARS, MOORE, REBMAN & WILLIAMS, P.C.

BY:_____

Attorneys for Hamilton County Trustee
Scott N. Brown (BPR 001212)
P. O. Box 1749
Chattanooga, Tennessee  37401-1749
  Telephone:  423/756-7000
  Facsimile:   423/756-4801

DEFREES & FISKE, LLC

BY:_____

Attorneys for Hamilton County Trustee
L. Judson Todhunter
200 South Michigan Avenue, Suite 1100
Chicago, Illinois   60624-2480
  Telephone:   312/372-4000
  Facsimile:   312/939-5617

**<u>CERTIFICATE OF SERVICE ON NEXT PAGE</u>**

## CERTIFICATE OF SERVICE

I, L. Judson Todhunter, an attorney certify that I caused a copy of the above Brief In Support of Plaintiff's Motion for Summary Judgment to be served upon the party named below by messenger delivery on November 14, 2007.

Michael M. Eidelman
Vedder Price Kaufman & Kammholz PC
222 North LaSalle Street
Suite 2600
Chicago, IL  60601

/s/ L. Judson Todhunter
L. Judson Todhunter

L. Judson Todhunter (2840510)
Defrees & Fiske LLC
200 S. Michigan Ave., #1100
Chicago, IL 60604
Telephone:  312-372-4000
Fax:  312-939-5617

FORM B10   (Official Form 10) (4/04)

| UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>**APPLIANCE CONTROL GROUP, INC. et. al.**<br>**APPLIANCE CONTROLS GROUP HOLDINGS** | Case Number  **04-14517**<br><br>**Judge Initials:  ABG** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>HAMILTON COUNTY<br>DELINQUENT TAX OFFICE<br>107 COURTHOUSE<br>CHATTANOOGA, TN 37402<br><br>Telephone No.  (423) 209-7272 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>X Check box if the address differs from the address on the envelope sent to you by the court. | This Space is For Court Use Only |
|---|---|---|

| Account or other number by which creditor identifies debtor:<br><br>PER 1005960 | Check here if this claim<br>__ replaces<br>__ amends    A previously filed claim no. ___,  filed: |
|---|---|

**1. Basis for Claim**
☐ Goods sold          ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Services performed  ☐ Wages, salaries, and compensation (fill out below)
☐ Money loaned           Last four digits of SS #:
☐ Personal injury/wrongful death   Unpaid compensation for services performed
X Taxes   PERSONALTY        from _____ to _____
☐ Other _____           (date)      (date)

**2. Date debt was incurred:   2004** | **3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:  $48,571.00*    *Plus 12% interest from March 1, 2005**

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim.
   Attach itemized statement of all interest or additional charges.

**5. Secured Claim, First Lien**
x  Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:

__ Real Estate  ☐ Motor Vehicle

X Other   **TANGIBLE PERSONAL PROPERTY**

Value of Collateral: $

Amount of arrearage and other charges at time case

filed included in secured claim, if any:   $

**6. Unsecured Nonpriority Claim $**
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**      * **PRIORITY UNSECURED TO THE EXTENT TAX AND INTEREST EXCEEDS VALUE OF PERSONAL PROPERTY ASSETS**

__ Check this box if you have an unsecured priority claim

Amount entitled to priority $ _____

Specify the priority of the claim:

☐ Wages, salaries, or commissions (up to $4000),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C.§ 507(a)(3).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).

☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to government units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| **8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br><br>**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain.  If the documents are voluminous, attach a summary.<br><br>**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | This Space is For Court Use Only |
|---|---|

| Date<br><br>Oct. 17, 2005 | SPEARS, MOORE, REBMAN & WILLIAMS<br><br>By: _signature_<br>Scott N. Brown, Jr.   (#01212)<br>Attorney for Hamilton County Delinquent Tax Office<br>801 Broad Street, Sixth Floor<br>P. O. Box 1749<br>Chattanooga, TN 37401-1749<br>(423) 756-7000 | **EXHIBIT**<br><br>**1** |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Hamilton County
# Property Management - Trustee Access

Current User:

**LCRANE**

| Home | Search | Reports | View | Special | Logout |

## Tax Bill Details

Return to Property Master Details

### Functions

| Make Payment | Post Transaction | Post Overpay | Partial Payment |
| Toggle BackTax | Toggle Tax Relief | Toggle Bankruptcy | Delete Pickup |

### Taxbill Details

**Property Address:**
**7463 BONNYSHIRE DR**

**Year: 2004   #69678**

Reprint ORIGINAL Bill
Reprint CURRENT Bill
Detailed Trancation Report
Print Simple ORIGINAL Bill
Print Simple CURRENT Bill

| Mailing Address |
|---|
| HARPER WYMAN CO |
| 1833 CENTRE POINT CIR STE 103 |
| NAPERVILLE, IL 60563 |

| Other Information | |
|---|---|
| Type of Bill | Personalty Property |
| Assr Pickup # | |
| Status | Active |
| Exempt Code | None |
| Appraisal | $5,747,290.00 |
| Original Assmnt | $1,586,769.00 |
| Current Assmnt | $1,586,769.00 |
| Assmnt % | 98.00% |

| Legal Description |
|---|
| 1. |
| 2. |
| 3. |
| 4.  129M D 011 |

| Rates: | |
|---|---|
| County | 3.0610 % |
| Municipal | 0.0000 % |
| Total | 3.0610 % |

| Mortgage Code | District | Map No. | GP | Ctl Map | Parcel |
|---|---|---|---|---|---|
| | Chattanooga (1) | PER | | | 1005960 |

| Base Amount: | $48,571.00 |
|---|---|
| Interest: | $4371.39 |
| Total: | $52942.39 |

Show Details

## Current Transactions

| Type | Amount | Asmt Adj | Payment |
|---|---|---|---|
| Tax Billing | $48,571.00 | | |

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

CARL E. LEVI, TRUSTEE FOR            )
HAMILTON COUNTY, TENNESSEE,          )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )        Case No.: **1:06-CV-00139**
                                     )
HILCO CAPITAL, L.P.,                 )
                                     )
          Defendant.                 )
                                     )

## DEFENDANT HILCO CAPITAL, L.P.'S MOTION TO TRANSFER
## VENUE OR, IN THE ALTERNATIVE, TO EXTEND DISCOVERY DEADLINES

COMES NOW Hilco Capital, L.P. ("*Hilco*"), pursuant to 28 U.S.C. §§ 1404(a) and

1406(a), and files its Motion to Transfer Venue to the United States District Court for the

Northern District of Illinois, for automatic referral to the United States Bankruptcy Court for the

Northern District of Illinois ("*Illinois Bankruptcy Court*"). In the alternative, Hilco respectfully

requests entry of an Order extending the discovery deadlines previously set by this Court. In

support of its requested relief, Hilco respectfully shows:

### SUMMARY OF ARGUMENT

Everything about this case—the facts, the law and prior judicial involvement—call for

this case to be transferred to the United States District Court for the Northern District of Illinois,

for automatic referral to the Illinois Bankruptcy Court. As explained in greater detail below,

Carl E. Levi, Trustee for Hamilton County, Tennessee ("*Plaintiff*") is a creditor of Appliance

Controls Group, Inc. ("*ACG*"), a company whose bankruptcy case has been pending in the

Illinois Bankruptcy Court since 2004. Hilco is one of ACG's post-petition or "DIP" lenders.

Since the inception of the bankruptcy case, the Illinois Bankruptcy Court entered various Orders

concerning Hilco's rights and status as a DIP Lender (collectively, the "*Post-Petition Financing*

*Orders*"), many of which directly affect the validity of Plaintiff's claim in this action.

1

CHICAGO/#1573073.2
MH: 404360

**EXHIBIT**

2

Additionally, the Illinois Bankruptcy Court entered an Order (the "*Sale Order*"), a copy of which is attached hereto as Exhibit "A," approving, *inter alia*, (i) ACG's sale of substantially all of its assets; and (ii) distributions to, among others, Hilco. The Sale Order also states that the Illinois Bankruptcy Court retains jurisdiction to:

> (a)     Interpret, implement and enforce the terms and provisions of this Order and the terms of the Sale Agreement, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith; ...

> (d)     *Adjudicate all issues concerning alleged liens and other Claims and any other alleged Interests in and to the Assets or the Sale Proceeds, including the extent, validity, enforceability, priority and nature of all such alleged liens and other Claims and any other alleged interests relating to the Sale Proceeds.* (emphasis added)

Sale Order, ¶34.

As set forth in the Complaint, Plaintiff now seeks to recover from Hilco—as ACG's lender—amounts allegedly due it from ACG. Plaintiff asserts that, notwithstanding the language of both the Post-Petition Financing Orders and the Sale Order, its tax lien enjoys a higher priority than the liens and claims granted to Hilco; thus, Plaintiff concludes, it should have been paid from the proceeds of the sale prior to Hilco. Pursuant to the express terms of the Sale Order, this is exactly the type of dispute which the Illinois Bankruptcy Court retained jurisdiction to resolve. Moreover, the Illinois Bankruptcy Court has direct knowledge of the facts, parties and issues relating to Plaintiff's case. Finally, the Illinois Bankruptcy Court is best suited to interpret and enforce its prior Orders.

Should this Court deny the Motion to transfer venue, Hilco respectfully requests entry of an Order extending the discovery deadlines previously set by the Court for an additional sixty days.

2

## BACKGROUND

1.      Plaintiff filed its complaint (the "*Complaint*") seeking recovery of unpaid taxes on certain property formerly belonging to ACG, a company formerly doing business in Tennessee.

2.      Prior to the commencement of this action, on or about April 12, 2004, ACG filed for relief under Chapter 11 of the United States Bankruptcy Code. Its case remains pending in the Illinois Bankruptcy Court under Case Number 04-14517. In September 2004 (after entry of the Sale Order), ACG's Chapter 11 case was converted to Chapter 7.

### ACG's Post-Petition Financing

3.      While the Chapter 11 case was pending, the Illinois Bankruptcy Court entered the Post-Petition Financing Orders.  Of these Orders, the Agreed Final Order Authorizing the Debtors to Enter Postpetition Financing Agreement and Obtain Postpetition Financing Pursuant to 11 U.S.C. §§105, 362 and 364 of the Bankruptcy Code, and Granting Liens, Security Interests and Superpriority Claims (the "*Final DIP Order*"), a copy of which is attached hereto as Exhibit "B", is determinative. Pursuant to the Final DIP Order, the Illinois Bankruptcy Court authorized ACG to enter into that certain Post-Petition Loan and Security Agreement (the "*Loan Agreement*"), a copy of which is attached hereto as Exhibit "C".  Pursuant to the Final DIP Order and the Loan Agreement, ACG was authorized to borrow up to $14,600,000 to fund ordinary working capital and general corporate needs. In consideration therefore, Hilco was granted, *inter alia*, a Superpriorty Claim (as that term is defined in ¶11(a) of the Final DIP Order) and Post-Petition Liens (as that term is defined in ¶11(b) of the Final DIP Order), subject only to Permitted Priority Liens[1], and other entitlements not relevant in this instance.

---

[1]    Pursuant to the Loan Agreement, Plaintiff's purported tax lien does not fall within the scope of Permitted Priority Liens.  See, Loan Agreement, pp.17-18.

3

### The Sale Process

4.      On June 21, 2004, ACG filed its Motion to Authorize Sale of Assets Pursuant to Section 363 of the Bankruptcy Code ("**Sale Motion**"). In accordance with the terms of the Sale Motion, ACG marketed its assets pursuant to procedures approved by the Illinois Bankruptcy Court and negotiated the terms of an asset sale with numerous potential purchasers. At the conclusion of this process and in conformity with the Sale Order, ACG entered into an Asset Purchase Agreement ("**APA**") with Burner Systems International, Inc. ("**BSI**")[2]. The sale contemplated by the APA closed on or about July 26, 2004.

5.      The purchase price for the assets subject to the APA was the sum of: (i) $7,500,000, plus (ii) ACG's actual cost of certain inventory, plus (iii) up to $132,000 in "cure amounts" relating to the assumption of certain executory contracts pursuant to 11 U.S.C. §365, plus (iv) up to $255,000 in payments in respect of certain payroll liabilities, plus (v) up to $400,000 in payments in respect of trade debt[3], plus (vi) up to $8,000 in payments in respect of the obligations owed to General Electric, less certain credits and prepayments.

6.      Immediately prior to the closing of the transactions contemplated in the APA, ACG was indebted to Hilco in the approximate principal amount of $12,550,000[4], plus accrued and unpaid interest, fees and expenses owing to Hilco, including reasonable attorneys' fees incurred under or in connection with the Loan Agreement. The sale proceeds, plus the funds ultimately received from the assets excluded from the sale to BSI, were insufficient to pay Hilco.

---

[2]   A copy of the APA is available upon request to undersigned counsel.
[3]   Amounts in excess of the amounts identified in sub-paragraphs (iv) and (v) were to be paid by ACG.
[4]   In addition, Hilco held an additional $700,000 pre-petition claim against ACG.

4

## Summary of Plaintiff's Argument

7.      Plaintiff seeks relief in this matter based upon its assertion that it did not receive notice of the proceedings in the bankruptcy case[5] and, accordingly, its lien on the Debtor's property transferred to the sale proceeds.  Clearly, Plaintiff knew of ACG's bankruptcy filing, however it chose not to investigate the impact of the bankruptcy filing on its rights and claims. Moreover, as evidenced by the express terms of the Final DIP Order and the Sale Order, the terms of such Orders are binding on all parties in interest. (See, Final DIP Order, ¶1; Sale Order, ¶20.)  The parties have agreed that the record in the bankruptcy case is the primary, if not sole source of facts and evidence in this matter.  The issue to be resolved relates to the interpretation and effect of the Illinois Bankruptcy Court's Orders regarding the status and/or priority of Plaintiff's lien.   This is one of the very issues over which the Illinois Bankruptcy Court specifically retained jurisdiction.

## ARGUMENT AND AUTHORITY

A.      Venue Should be Transferred Because the Illinois Bankruptcy Court Specifically Retained Jurisdiction over the Issues Raised by Plaintiff.

8.      As discussed above, the Sale Order clearly states that the Illinois Bankruptcy Court retains jurisdiction over "all issues concerning alleged liens and other Claims and any other alleged Interests in and to the Assets or the Sale Proceeds, including the extent, validity, enforceability, priority and nature of all such alleged liens and other Claims and any other alleged interests relating to the Sale Proceeds."  See, Sale Order, ¶34(d).  Plaintiff brings its cause of action to enforce its alleged interest in a portion of the "Sale Proceeds."  This matter

---

[5]      It should be noted that service of each of the Motions relevant to this matter (including service of any Orders entered with respect to such Motions) was not the responsibility of Hilco or its counsel.  Rather, responsibility for such matters was borne by ACG's Chicago-based bankruptcy counsel.

5

falls squarely within the purview of actions over which the Illinois Bankruptcy Court intended to

retain jurisdiction.

    B.      <u>Venue Should Be Transferred to the Bankruptcy Court for the Northern District of
Illinois Pursuant to 28 U.S.C. § 1404(a).</u>

        28 U.S.C. § 1404(a) states that:

> For the convenience of parties and witnesses, in the
> interest of justice, a district court may transfer any
> civil action to any other district or division where it
> might have been brought.

    9.      For the reasons set forth above, venue should be transferred to the United States

District Court for the Northern District of Illinois, for automatic referral to the Illinois

Bankruptcy Court. As discussed above, virtually every allegation made in the Complaint relates

to ACG's bankruptcy case, including interpretation of Orders entered by the Illinois Bankruptcy

Court which (1) directly address the lien and priority issues and (2) reserve jurisdiction to resolve

any disputes relating thereto. Given the allegations of the Complaint, the Illinois Bankruptcy

Court is clearly the forum with the most familiarity with the subject matter in dispute. In

addition, the convenience of the parties and witnesses, including counsel for ACG and Hilco,

support transfer of this case to the district where the related bankruptcy case is pending.

Moreover, the transfer of the case will not be prejudicial to the Plaintiff. Plaintiff filed a proof of

claim in ACG's bankruptcy case and thus consented to the jurisdiction of the Illinois Bankruptcy

Court.

    C.      <u>Alternatively, Venue Should Be Transferred to the Bankruptcy Court for the
Northern District of Illinois under 28 U.S.C. § 1406(a).</u>

        28 U.S.C. § 1406(a) states that:

> The district court of a district in which is filed a
> case laying venue in the wrong division or district
> shall dismiss, or if it be in the interest of justice,

6

transfer such case to any district or division in which it could have been brought.

10.     In the interests of justice, venue should be transferred to the District Court for the Northern District of Illinois for automatic referral to the Illinois Bankruptcy Court because (1) the relief sought in this matter is related to a case arising under title 11 of the United States Code; (2) the relief sought relates directly to orders entered by the Illinois Bankruptcy Court; and (3) the Illinois Bankruptcy Court expressly retained jurisdiction over all matters relating to lien priority issues.

## **ALTERNATIVE RELIEF**

11.     In the event the Court denies the Motion to Transfer Venue, Hilco requests entry of an Order extending all discovery deadlines for an additional sixty days.[6]  Hilco respectfully requests that all discovery, including the taking of depositions "for evidence," be completed on or before May 1, 2007 and that all dispositive motions be filed on or no later than June 1, 2007.

WHEREFORE, PREMISES CONSIDERED, Defendant Hilco Capital, L.P. respectfully requests that this Court dismiss this matter for improper venue or alternatively, transfer venue of this matter to the United States District Court for the Northern District of Illinois, for automatic referral to the Illinois Bankruptcy Court.  Alternatively, Hilco respectfully requests entry of an Order extending the discovery deadlines for an additional sixty days and for any such further relief to which it may be entitled.

Dated:  February 19, 2007

---

[6]    On January 24, 2007, this Court entered an Order [Doc. No. 12] modifying the Scheduling Order entered on October 19, 2006 [Doc. No. 9].

7

CHICAGO/#1573073.2
MH: 404360

Respectfully submitted,

/s/ Rebecca B. Howald
**JEFFREY S. PRICE**
**SAM H. POTEET, JR.**
**REBECCA B. HOWALD**
MANIER & HEROD, P.C.
Suite 2200, One Nashville Place
150 Fourth Avenue North
Nashville, TN  37219
(615) 244-0030 (Phone)
(615) 242-4203 (Fax)
jprice@manierherod.com
rhowald@manierherod.com

Attorneys for Defendant
**HILCO CAPITAL, L.P.**


### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished to the following via the Court's CM/ECF system on February 19, 2007:

Scott N. Brown, Jr.
SPEARS, MOORE, REBMAN & WILLIAMS
801 Broad Street, 6th Floor
P.O. Box 1749
Chattanooga, TN  37401-1749
SNB@SMRW.com


/s/ Rebecca B. Howald
Rebecca B. Howald


8

CHICAGO/#1573073.2
MH: 404360